**Thomas Lee NEELEY, Petitioner,**

v.

**Jack DUCKWORTH, Respondent.**

**No. S 79–50.**

United States District Court, N. D. Indiana, South Bend Division.

July 12, 1979.

Thomas Lee Neeley, pro se.

Theodore L. Sendak, Atty. Gen., Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This Court now considers the petitioner's Motion for Issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C.

§ 2254. Petitioner, Thomas Lee Neeley, makes two allegations in his motion, one of which raises an issue not yet conclusively determined in this Circuit. Petitioner first alleges that his guilty plea was not voluntarily made because the state trial judge did not follow the prosecutor's recommendation of sentence. Secondly, petitioner contends his guilty plea was defective because the trial court did not advise him explicitly of all his constitutional rights that he was waiving by making the plea. Specifically, petitioner states that he was not informed of his right to confront his accusers. This Court has requested and received the complete state court record in this cause and the same has been carefully reviewed. See, *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Petitioner Neeley pleaded guilty to robbery while armed, on February 28, 1974, in St. Joseph Superior Court in South Bend, Indiana. From the record it is apparent that Neeley pleaded guilty to that charge in return for the state's dropping of two other charges, inflicting injury in the commission of an armed robbery and assault with intent to kill. The prosecutor was to recommend a ten year sentence for the remaining charge. This was done at the time of the pleading. The offer of the state was understood by the petitioner to be a recommendation only and that the final decision as to the sentence was the court's.

After the petitioner entered his guilty plea, the judge sentenced him to twenty years imprisonment, instead of ten years. Neeley petitioned the St. Joseph Superior Court for post-conviction relief pursuant to Ind.R.P.C. 1 in July of 1975. That petition was denied on October 21, 1977. Petitioner then appealed to the Indiana Supreme Court. That court affirmed the petitioner's conviction, finding that he did knowingly and intelligently plead guilty to the crime charged and that there was no error in the trial judge's sentencing of petitioner to twenty years imprisonment. *Neeley v. State*, Ind., 382 N.E.2d 714 (1978). That court found that the petitioner was adequately advised of the consequences of a guilty plea and of the constitutional rights waived by his plea. The court further found that petitioner was advised of his right of confrontation and that he knowingly, voluntarily and intelligently waived that right. *Neeley, supra*, 382 N.E.2d 718.

I.

■ Considering the second contention first, this Court is faced with the question of whether a guilty plea taken in a state court proceeding can be voluntarily and intelligently made under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and cases following, even if the state court judge does not specifically advise the defendant, at the time of the pleading, that by pleading guilty he will waive his right to confront his accusers. In considering this question, the Court is also faced with the more general issue of whether *Boykin* and its progeny require the states, as a matter of federal constitutional law, to recite "the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure." *Boykin*, 395 U.S. 238, 245, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (Harlan, dissenting).

Petitioner relies upon the United States Supreme Court ruling in *Boykin v. Alabama, supra*, for the proposition that since he was not specifically advised of his right to confront his accusers, he was not aware of the consequences of the plea and therefore, his plea was not made in a knowing and intelligent manner. He bottoms his contention upon that part of the *Boykin* opinion that states the waiver of the three enunciated federal rights, in this instance the right of confrontation, cannot be presumed from a silent record. *Boykin*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. Petitioner would have this Court find that since the state court did not articulate the specific rights waived according to the litany of *Boykin*, the result is a silent record on that waiver and, as such, his plea is defective. In short, petitioner is asking this Court to formalize the three *Boykin* warnings as a requirement for a valid guilty plea in all state court criminal cases. Such a

request this Court will not honor. Although this Circuit has yet to speak on the issue, a reading of case law from the other circuits shows that the specific articulation of the *Boykin* warnings is not held to be a requirement of a valid guilty plea. Nor has the Supreme Court itself demanded in federal criminal cases the strict adherence to the *Boykin* litany that petitioner asks this Court to impose on the state courts. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Brady* the court upheld a guilty plea as voluntarily and intelligently made even though the defendant had not been specifically advised of the three rights discussed in *Boykin.* The court looked to the issue of whether the defendant entered his plea with knowledge and understanding and in a voluntary manner. In clarifying *Boykin,* the court stated, "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady,* 397 U.S. at 747–748, fn. 4, 90 S.Ct. at 1468.

In *Brady,* the defendant was charged with kidnapping in violation of 18 U.S.C. § 1201(a). Although that case dealt with a federal court proceeding, its importance is not lost in this case. The *Brady* Court looked to the issue of voluntariness and intelligence of the person taking the plea without tying its analysis to the strictures of the *Boykin* litany. The court considered all the relevant circumstances surrounding the guilty plea in order to determine its voluntariness. Nowhere in the *Brady* opinion did the court indicate that a specific articulation of the three constitutional rights stated in *Boykin* would be a requirement for a valid guilty plea. Likewise, in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the determination of whether a plea was made voluntarily and intelligently did not rest upon the structured questions and answers of the *Boykin* litany, but rather upon the determination of "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162.

Other Circuits have likewise held that *Boykin* does not require the articulation of the three constitutional rights in order to make a guilty plea valid. *Wade v. Coiner,* 468 F.2d 1059 (4th Cir. 1972); *McChesney v. Henderson,* 482 F.2d 1101 (5th Cir. 1973), cert. den. 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974); *Todd v. Lockhart,* 490 F.2d 626 (8th Cir. 1974); *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974).

In *Wilkins,* the defendant was not given any of the *Boykin* warnings at his state court guilty plea. Citing extensively from the Supreme Court opinions of *Brady, supra* and *Alford, supra,* that court found "that Boykin does not require specific articulation of the above mentioned three rights in a state proceeding." *Wilkins, supra,* at 763. In *Todd v. Lockhart, supra,* the Eighth Circuit Court of Appeals stated in footnote 1 of the opinion:

"We note that *Boykin* enumerated three constitutional rights which are waived by a plea of guilty, and those rights are: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. But we agree that *Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered." *Todd v. Lockhart,* 490 F.2d at 628 fn. 1.

This Court agrees with these circuits and finds that a specific recital of the *Boykin* trilogy of constitutional rights waived during a guilty plea is not the "sine qua non of a valid guilty plea." *Wilkins v. Erickson,* 505 F.2d 761, 763 (9th Cir. 1974).

This is not to say this Court is unaware of this Circuit's position on Rule 11 pleas, a position most recently reiterated in *United States v. Fels,* 599 F.2d 142 (decided April 24, 1979, No. 77–Cr–1102, 7th Cir.). Moreover, this Judge is not unmindful of the basic mandate under the Constitution of the United States as interpreted in decisions of the Supreme Court of Indiana that a trial court must determine that a plea of guilty is made knowingly and voluntarily. See *Taylor v. State,* 156 Ind.App.

659, 297 N.E.2d 896 (1973) (court found silent record at plea cannot be the basis of finding a knowing, intelligent waiver). However, Rule 11 standards apply only to a plea proceeding in federal courts. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Here the court is faced with a plea brought before a state court. Thus the question becomes not only if *Boykin* is applicable to state court proceedings, but whether the colloquy of Rule 11 of the Federal Rules of Criminal Procedure is also mandated. Other circuits have found that Rule 11 is not fully applicable to state court guilty pleas. *Hendron v. Cowan*, 532 F.2d 1081 (6th Cir. 1976); *Wade v. Coiner, supra; Wilkins v. Erickson, supra; Scranton v. Whealon*, 514 F.2d 99 (6th Cir. 1975). The Supreme Court in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), expressly required federal judges to address defendants to determine that the plea was understanding and voluntary and that there was a factual basis therefor, that is, that the defendant confess to the offense charged. The *McCarthy* decision was based solely upon Rule 11. *McCarthy*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418. *McCarthy*, however, has no application to state guilty pleas. *Perry v. Crouse, Warden*, 429 F.2d 1083 (10th Cir. 1970); *United States v. Sherman*, 474 F.2d 303 (9th Cir. 1973). In *Sherman*, that court stated, "In short, neither *McCarthy* nor *Boykin* requires that a defendant be specifically advised of all his constitutional rights by the trial court if his plea is to be valid. Nor do we think that due process or Rule 11 impose such a requirement. . . . Requiring a specific waiver of every one [of his constitutional rights] would only sow the seeds for later collateral attack. See, *Boykin v. Alabama, supra*, 395 U.S. at 244, 89 S.Ct. 1709." *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir. 1973).

■ In the context of a state defendant pleading guilty in state court, the Fourth Circuit Court of Appeals denied habeas corpus relief to a defendant who claimed his plea was invalid because he did not understand its consequences. *Wade v. Coiner*, 468 F.2d 1059 (4th Cir. 1972). There, the state defendant was not read the individual constitutional rights he would give-up at the plea. In affirming the district court's denial of habeas corpus relief, the court stated, "A catechism of the constitutional rights that are waived by entry of a guilty plea is not compelled either by the Constitution or by Rule 11." *Wade, supra*, at 1061. Due process simply does not require a state court to follow the procedures required by Rule 11. See, *United States ex rel. Montgomery v. Illinois*, 473 F.2d 1382 (7th Cir. 1973).

■ Therefore, to determine if the petitioner's plea was made voluntarily and intelligently, this Court must look to the entire state court record on the matter. Instead of testing the voluntariness of the plea by the formal litany of *Boykin*, this Court must examine the totality of the circumstances of petitioner's plea and determine whether the substance of waiving the right to confront one's accusers, rather than the specific words, was conveyed to Neeley. The totality of the circumstances, as indicated from the record of the case shows that the petitioner was specifically advised of and understood his privilege against compulsory self-incrimination guaranteed by the Fifth Amendment. Petitioner was also advised of his right to a jury trial. However, concerning the third warning enunciated in *Boykin*, that of confronting one's accusers, the trial judge did not specify that particular right to the defendant. What the judge did say was "If you have a trial you have a right to subpoena people to come in and testify and if you plead guilty, you waive that, you understand? Neeley answered affirmatively. This oblique reference to the right of confrontation was made just after the court's warning against self-incrimination and just before the court's advice that petitioner had a right to a jury trial. Neeley was asked at the pleading if all of this met with his approval and responded that it did.

The record of the post-conviction hearing indicates the following statements were

made in response to questions put to the petitioner by his own attorney:

Q. . . . . What does it mean to plead guilty to a ten flat?

A. What does it mean?

Q. Yes.

A. That means that I'm violating my rights to a trial by jury and confront my accusers. (record, p. 181)

On the basis of the entire record, both at the plea proceeding and the subsequent post-conviction hearing, it is evident that petitioner Neeley understood the substance of his right to confrontation. The state trial court record affirmatively shows that the plea was given by petitioner in a knowing, intelligent and voluntary manner. Moreover, the record, although not containing the specific words concerning the necessary waiver of the confrontation right, does contain a reference to the petitioner's right "to subpoena people to come in and testify." Petitioner was advised he would waive that right if he plead guilty and he affirmatively responded that he understood that waiver. This Court finds that the record was not "silent" on the issue of confrontation of one's accusers. Although the preferred practice would have been for the trial judge to conduct a colloquy from the bench similar to Rule 11 of the Federal Rules of Criminal Procedure, the record affirmatively shows that Neeley intelligently and voluntarily entered into his plea. Petitioner's due process rights were not violated and his plea was valid in light of the record made.

Since there is substantial evidence from the complete state record that Neeley was aware of his rights being waived and of the consequences of that waiver, petitioner's case is therefore factually distinguishable from *Boykin.* In *Boykin,* the record reflected a situation where a state defendant was arraigned on five indictments of robbery and pleaded guilty to all five indictments. The record in *Boykin* shows the judge asked no questions of petitioner concerning his plea and that the petitioner did not address the court. *Boykin,* 395 U.S. 238, 239, 89 S.Ct. 1709, 1710, 23 L.Ed.2d 274. No post-conviction hearing was held and there was no evidence from the state court record that the petitioner entered his plea of guilty in a voluntary and intelligent manner. *Id.* 395 U.S. at 244, 89 S.Ct. at 1713. Such is not the situation of Neeley's pleading. He was examined by the state trial judge and questioned about his understanding and willingness to plead guilty. Two of the specific *Boykin* rights were recited to petitioner at the pleading. The third right was at least referred to. Finally, at the post-conviction hearing, petitioner admitted that he understood that by pleading, he was waiving his right to confront his accusers. This Court finds that he made his plea in an intelligent and voluntary manner.

## II.

Neeley also contends, at some length, that because the state court judge declined to go along with the prosecutor's recommendation, due process requires that the judge should have given the petitioner an opportunity to withdraw his guilty plea. Petitioner Neeley admits that the plea agreement bound the state only to the extent that the prosecutor would recommend a ten year sentence. He does not assert that the state breached its commitment under the plea bargain, or that the court was required to honor the state's recommendation for a ten year sentence. Petitioner does contend that a failure to impose a ten year sentence by the court was a rejection of the plea agreement and, as a consequence, it was error not to allow him to withdraw his plea.

Petitioner's reliance upon case law for the proposition that a sentencing judge must afford an opportunity to the petitioner to change his plea if the agreement was not honored is distinguishable from the case at bar. In this instance, the plea agreement was honored by the state. The record at the plea proceeding shows that both the petitioner and the state understood the plea agreement to be that the state would recommend a ten year sentence to the court. In return for his plea, the state dropped two of the pending charges against the petition-

er, inflicting injury in the commission of an armed robbery and assault with intent to kill. During the plea, the court informed Neeley that it was not bound by the recommendation of the state. Petitioner replied that he understood. Moreover, at his post-conviction hearing, petitioner again stated that he understood that the court was not bound by the state's recommendation. The court's refusal to adopt the state's recommendation is not a rejection of the plea agreement. In a situation similar to this one, this circuit held that a plea agreement is not rejected simply because the court refuses to go along with the government's recommendation of sentence. *United States v. Gaertner*, 593 F.2d 775 (7th Cir. 1979). In *Gaertner*, the court affirmed the denial by the district court of the defendant's motion for an arrest of judgment and withdrawal of his plea. The *Gaertner* court stated:

> "The court's refusal to adopt the government's sentencing recommendation is simply not a rejection of the plea agreement, since by its very terms the court was not bound by the recommendation, and the court so admonished the appellant on the record." *Id.* at 777.

Petitioner Neeley plea bargained for a sentence recommendation, not a disposition. The state presented the recommendation which the petitioner knew would not be binding upon the court. All this was done according to the understanding of the plea agreement. Petitioner will not now be heard to complain that the agreement was breached. See also, *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977); *United States v. Henderson*, 565 F.2d 1119 (9th Cir. 1977), cert. den. 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).

 As a matter of record, this Court now considers and denies the petitioner's Motion for Legal Assistant, Motion to Check Out Record and Motion for Oral Hearing. Appointment of legal counsel in a civil cause is within the discretion of the court. After careful consideration and a reading of all the pleadings in this cause, this Court finds that the issues were ade-

quately presented by petitioner and now denies his motion for appointment of counsel or legal assistant. This Court has requested and extensively examined the petitioner's state court record and finds no need in granting petitioner's motion to likewise examine it. There is little or no discrepancy between petitioner's allegations and the state court record. Petitioner's arguments rest upon legal contentions, not upon a dispute in the facts as shown in the record. Therefore, this Court now denies the petitioner's request to review the record. Finally, this Court denies petitioner's motion for an oral hearing, having more than adequately been briefed on the contentions, this Court finds no necessity in scheduling oral arguments.

Accordingly, this Court now DENIES the petitioner's motion pursuant to § 2254 of Title 18 U.S.C.